**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** 455 Massachusetts Ave., N.W. Washington, DC  20001, **NOAH BOOKBINDER** 10206 Brookmoor Dr. Silver Spring, MD  20901  Plaintiffs, v. **FEDERAL ELECTION COMMISSION** 1050 First St., N.E. Washington, DC  20463  Defendant. | Civil Action No. 1:18-cv-1060 |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      This is an action for injunctive and declaratory relief under the Federal Election Campaign Act of 1971 ("FECA" or "the Act"), 52 U.S.C. § 30109(a)(8)(A), challenging the Federal Election Commission's ("FEC" or "Commission") failure to act on an administrative complaint by Citizens for Responsibility and Ethics in Washington ("CREW") and Noah Bookbinder (collectively "Plaintiffs") against TH Holdings, LLC, Marvin C. Schwartz, Heather Oaks, LLC, Right to Rise USA, and its treasurer, Charles R. Spies (collectively "Respondents") for violating the FECA's ban on making political contributions in the name of another, knowingly permitting one's name to be used to effect a contribution in the name of another, and knowingly accepting a contribution made by one person in the name of another. Plaintiffs filed their administrative complaint on December 15, 2015, more than two years ago. Yet the FEC has, to date, failed to act on the complaint.

## JURISDICTION AND VENUE

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A) and 5 U.S.C. § 702. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202. Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. § 1391(e).

## PARTIES

3. Plaintiff CREW is a non-profit, non-partisan corporation organized under section 501(c)(3) of the Internal Revenue Code.

4. CREW is committed to protecting the right of citizens to be informed about the activities of government officials, ensuring the integrity of government officials, protecting our political system against corruption, and reducing the influence of money in politics. CREW works to advance reforms in the areas of campaign finance, lobbying, ethics, and transparency. Further, CREW seeks to ensure that campaign finance laws are properly interpreted, enforced, and implemented.

5. To advance its mission, CREW uses a combination of research, litigation, advocacy, and public education to disseminate information to the public about public officials and their actions, and the outside influences that have been brought to bear on those actions. A core part of this work is examining and exposing the special interests that have influenced our elections and elected officials and using that information to educate voters regarding the integrity of public officials, candidates for public office, the electoral process, and our system of government.

6. Toward this end, CREW monitors the activities of those who run for federal office as well as those groups financially supporting candidates for office or advocating for or

against their election. CREW regularly reviews campaign finance reports that groups, candidates, and political parties file with the FEC disclosing their expenditures and, in some cases, their contributors. Using the information in those reports, CREW, through its website, press releases, reports, and other methods of distribution, publicizes the role of these individuals and entities in the electoral process and the extent to which they have violated federal campaign finance laws.

7. CREW also files complaints with the FEC when it discovers violations of the FECA. Publicizing violations of the FECA and filing complaints with the FEC serve CREW's mission of keeping the public, and voters in particular, informed about individuals and entities that violate campaign finance laws and deterring future violations of campaign finance laws.

8. CREW is hindered in carrying out its core programmatic activities when those individuals and entities that attempt to influence elections and elected officials are able to keep their identities hidden. Likewise, the FEC's refusal to properly administer the campaign finance laws, particularly the FECA's reporting requirements, hinders CREW in its programmatic activity, as compliance with those reporting requirements often provides CREW with the only source of information about those individuals and groups funding the political process. As a result of the FEC's refusal to enforce the FECA, organizations and individuals are able to launder their contributions through third parties. This deprives CREW of information critical to advancing its ongoing mission of educating the public to ensure the public continues to have a vital voice in our political process and government decisions.

9. A part of CREW's work in carrying out its central mission CREW focuses on so-called "pay-to-play" schemes. Toward that end, CREW looks for correlations between donations to the campaign of a member of Congress or candidate and that member's subsequent congressional activities, including advocating for policies and legislation that serve the interests

of the member's donors. Information that an individual or entity made a large-dollar contribution may be very revealing about the influences that donor has brought to bear on the member post-election. Without information about the individuals and entities funding the political activities of organizations and individuals, CREW is stymied in fulfilling its central mission.

10. As an example, in May 2015, CREW issued a report, *Welcome to Washington: New Members of Congress Attract Special Interest Money,* that analyzed fundraising by newly elected members of Congress in their first year in office. CREW's analysis was based on FEC campaign contribution records that identified contributions to those members from special interest PACs, including PACs tied to corporations, unions, and issues groups. From this data, CREW determined that new members of the House of Representatives embraced fundraising from special interests after they took office and became more reliant on that money than they had been as candidates. Those members raised nearly $17.3 million from special interest PACs in 2015, an increase of 15.8% over the amount they raised as candidates during the entire 2014 election cycle. CREW further found that special interest PAC money accounted for an average of 37.6% of total funds raised by the new members in 2015, more than double the 17.3% rate from the 2014 election cycle. CREW was able to obtain this information because of the disclosure requirements to which the organizations receiving those contributions – federal candidates, party committees, PACs, and super PACs – are subject under the FECA.

11. As another example, on August 21, 2017, CREW published a blog post entitled *Synchronized Spending: The Dark Money Phantom's New Illusion*, which highlighted section 501(c)(4) dark money nonprofits that fully fund multiple federal super PACs that attack or support the same candidates. By making the work of one group appear to be the work of two independent groups, this tactic misleads the public, exaggerates candidates' outside support, and

exacerbates the problems caused by secret money in politics. CREW obtained the information used in this post from information the FECA requires political committees to disclose.

12. Plaintiff Noah Bookbinder is the executive director of CREW. He is a citizen of the United States and a registered voter and resident of the state of Maryland. As a registered voter, Mr. Bookbinder is entitled to receive all the information the FECA requires those engaged in political activities to report publicly. He is further entitled to the FEC's proper administration of the provisions of the FECA. Mr. Bookbinder is harmed in exercising his right to an informed vote when a political committee fails to report the true source of its contributions, as the FECA requires.

13. When Plaintiffs file complaints against violators of the FECA, they rely on the FEC, as the preliminary civil enforcement authority, to comply strictly with the FECA when making its investigative and enforcement decisions. *See* 52 U.S.C. § 30107(e). Plaintiffs are harmed and are "aggrieved" parties when the FEC refuses to act on meritorious complaints, refuses to enforce the FECA's mandatory disclosure requirements, or otherwise acts contrary to the requirements of the FECA. *See* 52 U.S.C. § 30109(a)(8)(C).

14. Defendant FEC is the federal agency established by Congress to oversee the administration and civil enforcement of the FECA. *See* 52 U.S.C. §§ 30106, 30106(b)(l).

**STATUTORY AND REGULATORY BACKGROUND**

15. The FECA and FEC regulations prohibit making a contribution in the name of another person, knowingly permitting one's name to be used for the purpose of making a contribution in the name of another person, and knowingly accepting a contribution made by one person in the name of another person. Specifically, 52 U.S.C. § 30122 provides: "No person shall make a contribution in the name of another person or knowingly permit his name to be used to

effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person."

16.   FEC implementing regulations, 11 C.F.R. § 110.4(b), echo these provision, prohibiting making a contribution in the name of another, knowingly permitting one's name to be used to effect a contribution, knowingly helping or assisting another to do so, and knowingly accepting a contribution made by one person in the name of another person. The regulation includes, as an example of a prohibited contribution, giving money, "all or part of which was provided to the contributor by another person (the true contributor) without disclosing the source of money[.]" *Id.* at § 110.4(b)(2).

17.   Under the FECA, any person who believes there has been a violation of the Act may file a sworn complaint with the FEC. 52 U.S.C. § 30109(a)(l). Based on the complaint, the response from the person or entity alleged to have violated the Act, facts developed by the Office of General Counsel ("OGC"), and any OGC recommendation, the FEC decides whether there is "reason to believe" a violation of the FECA has occurred. 52 U.S.C. § 30109(a)(2). A "reason to believe" exists where a complaint "credibly alleges" a violation of the FECA "may have occurred." FEC, Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12545 (Mar. 16, 2007).

18.   Under the FECA, the FEC has a 120-day period beginning on the date the administrative complaint is filed to act on the administrative complaint without the potential of subsequent action by the complainant. 52 U.S.C. § 30109(a)(8)(A).

19.   If the FEC fails to act on an administrative complaint within the 120-day period, any party aggrieved by the FEC's failure to act may file a petition with the United States District Court for the District of Columbia. *Id.*

20. This Court may issue a declaratory judgment that the FEC's failure to act on an administrative complaint is contrary to law and "may direct the Commission to conform with such declaration within 30 days." 52 U.S.C. § 30109(a)(8)(C).

## FACTUAL BACKGROUND

21. The administrative complaint underlying this action concerned two $100,000 contributions to Right to Rise USA, an independent expenditure-only committee ("super PAC") supporting Jeb Bush's presidential campaign. Right to Rise reported to the FEC these contributions were made by TH Holdings, LLC ("TH Holdings") and Heather Oaks, LLC ("Heather Oaks") on February 26, 2015 and March 9, 2015, respectively.

22. Right to Rise USA's disclosure reports provide little information about the donor limited liability corporations other than their addresses. The lack of information about these corporations and about the original source of the contributions has led to questions about "mystery money" and "ghost companies" funding groups supporting presidential candidates. *See* Russ Choma, Who's Behind the Ghost Companies Funding Jeb Bush's Super-PAC, *Mother Jones* (Dec. 2, 2015), *available at* http://bit.ly/2Hh3kEL; Eric Lichtblau and Nick Confessore, From Fracking to Finance, a Torrent of Campaign Cash, *New York Times* (Oct. 10, 2015), *available at* https://nyti.ms/2k2foKA.

23. Public records indicate that TH Holdings is owned in whole or in part by Mr. Schwartz and was created to hold title to real property.

24. TH Holdings was formed on June 9, 2010. On August 10, 2010, it completed the purchase of a property, 23 Tuthill Lane, Remsenburg, New York, for $452,000. The county assessment records for the 23 Tuthill Lane property list the owner as TH Holdings "c/o Marvin

Schwartz, 605 Third Ave., FL 42, New York, NY 10158-0180," an address that corresponds to the global headquarters of Neuberger Berman LLC, where Mr. Schwartz is a managing director.

25. On information and belief, TH Holdings does not conduct any business or serve any function other than holding title to 23 Tuthill Lane. Nor had TH Holdings sold 23 Tuthill Lane as of the date of the contribution to generate income. Thus, TH Holdings, LLC had no independent means of generating income sufficient to fund the $100,000 contribution to Right to Rise USA.

26. Heather Oaks was formed or incorporated on February 23, 2015 in Delaware, two weeks before the date of its $100,000 contribution to Right to Rise USA.

27. Heather Oaks does not appear to conduct any business, it does not have a presence on the internet, and it does not appear to own any property. On information and belief, Heather Oaks did not generate sufficient income in the two weeks between its formation and the date on which it contributed $100,000 to Right to Rise USA to account for the contribution.

28. On December 15, 2015, Plaintiffs CREW and Mr. Bookbinder filed an administrative complaint with the FEC seeking an investigation and enforcement action against TH Holdings, LLC, Marvin C. Schwartz, Heather Oaks, LLC, Right to Rise USA, and its treasurer, Charles R. Spies, for violations of the FECA. A true and correct copy of this administrative complaint is attached hereto as Exhibit 1.

29. Plaintiffs' administrative complaint alleged TH Holdings, Mr. Schwartz, and Heather Oaks violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b), which prohibit knowingly and willfully making a political contribution in the name of another person, or knowingly and willfully permitting one's name to be used by another to make a political contribution. The administrative complaint further alleged that Right to Rise USA and Mr. Spies violated 52

U.S.C. § 30122 and 11 C.F.R. § 110.4(b) by knowingly accepting a political contribution from one person in the name of another.

30. In a letter to Plaintiff Bookbinder dated December 22, 2015, counsel for the FEC acknowledged receipt of the administrative complaint. The complaint was assigned Matter Under Review ("MUR") number 6995.

31. As of the date of this filing, the FEC has not reached a final decision on MUR 6995, over two years after receiving the initial administrative complaint.

32. Multi-year delays in acting on a pending complaint are not uncommon at the FEC, leading one FEC commissioner to express concern that "[e]ffective enforcement of the law is undermined by pervasive delays." *In the Matter of American Conservative Union, et al.*, Statement of Reasons of Comm'r Weintraub, MUR 6920, (Dec. 19, 2017), *available at* http://bit.ly/2CDnumJ.

33. The pervasive delays also often serve as a cause for other FEC commissioners to halt enforcement actions. For example, on May 23, 2011, CREW filed a complaint with the FEC alleging that the Commission on Hope, Growth, and Opportunity ("CHGO") violated the FECA by spending more than $2.3 million to broadcast television ads in 12 elections for seats in the House of Representatives. Despite the nature and extent of the spending, CHGO failed to register as a political committee and failed to file disclosures as required by the FECA, which CREW alleged constituted violations of the FECA. *In the Matter of The Commission on Hope Growth and Opportunity*, Complaint, MUR 6471 (May 23, 2011) *available at* http://bit.ly/2qHA6aL. The complaint languished before the FEC, with months and even years passing between actions. *See id.*, Summary, *available at* http://bit.ly/2o52aBt. Finally, in November 2015, more than four years after CREW filed its complaint, three controlling commissioners voted to exercise their

discretion to dismiss the case and close the file without finding reason to believe that there was a violation of the FECA, in part because the "statute of limitations [had] effectively expired." *Id.*, Statement of Reasons of Comm'rs Petersen, Hunter, and Goodman, MURs 6391 and 6471 (Nov. 6, 2015), *available at* http://bit.ly/2D8LW0m. CREW has since brought suit challenging this dismissal as contrary to law, and litigation is ongoing. *See CREW v. FEC*, Case No. 17-5049 (D.C. Cir.) (appeal pending).

34. Similarly, on February 27, 2015, CREW filed a complaint against American Conservative Union, Now or Never PAC, James C. Thomas III, and an Unknown Respondent alleging legal violations stemming from a failure to disclose the true source of a $1.71 million contribution to Now or Never PAC. *In the Matter of American Conservative Union, et al.,* Complaint, MUR 6920 (Feb. 27, 2015), *available at* http://bit.ly/2D6UHI7. OGC investigated the allegations and recommended finding reason to believe the respondents violated the FECA. *Id.*, First General Counsel's Report (Jan. 20, 2016), *available at* http://bit.ly/2swd1sQ. That report, however, sat before the commissioners for a full year, and by the time the FEC was willing to move forward on the matter it was "just about out of time." *Id.*, Statement of Reasons of Comm'r Weintraub (Dec. 19, 2017), *available at* http://bit.ly/2CDnumJ.

35. While the FEC eventually found reason to believe that certain respondents violated the FECA, resulting in a $350,000 fine, the controlling commissioners ultimately declined to pursue investigation and enforcement against other unknown respondents who were either the true source of the contribution or also acted as a conduit, justifying this decision in large part due to the impending statute of limitations. *Id.*, Statement of Reasons of Comm'rs Hunter and Goodman (Dec. 20, 2017) *available at* http://bit.ly/2CTqQ8q. The decision not to pursue further investigation constituted "an egregious example of someone using a web of

organizations to hide the true source of a $1.7 million contribution to a super PAC — and getting away with it." *Id.*, Statement of Reasons of Comm'r Weintraub (Dec. 19, 2017), *available at* http://bit.ly/2CDnumJ. CREW has since brought suit challenging the FEC's dismissal of the complaint against the other unknown respondents as contrary to law. *See CREW v. FEC*, Case No. 1:17-cv-2770 (D.D.C.) (ABJ) (litigation ongoing).

36. Such delays commonly impact the FEC's ability to carry out its enforcement function, as documents may be destroyed or lost and witness memories may fade. In addition, the running of the five-year statute of limitations constrains the FEC's enforcement, as after the statute has run, it can no longer issue fines.

37. These delays also hamper CREW's ability to access the information that it is entitled to under the statute. Furthermore, to the extent evidence is lost or degraded during a multi-year delay at the FEC, the delay undermines CREW's ability to litigate under the FECA should CREW file a suit alleging that an FEC final action is contrary to law.

## FIRST CAUSE OF ACTION

(FEC Inaction Contrary to Law)

38. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

39. On December 15, 2015, more than two years ago, the FEC received Plaintiffs' administrative complaint against TH Holdings, Marvin C. Schwartz, Heather Oaks, Right to Rise USA, and its treasurer, Charles R. Spies.

40. Plaintiffs' administrative complaint credibly alleged violations of FECA and FEC regulations by TH Holdings, Mr. Schwartz, Heather Oaks, Right to Rise USA, and Mr. Spies.

41. The FEC has failed to act in a timely manner on the administrative complaint, and to date has not reached a resolution or disclosed taking any action on the complaint.

42. On information and belief, the factual allegations contained in the administrative complaint can be verified by examining public records readily available to the FEC and by interviewing a small number of individuals.

43. Sufficient time has elapsed to allow the FEC to conduct an investigation of MUR 6995. The FEC's failure to act on the administrative complaint is unreasonable and contrary to law under 52 U.S.C. § 30109(a)(8), and the Court may compel the FEC to act.

44. Any party aggrieved by the failure of the FEC to act on an administrative complaint may petition the Court for a declaration that the failure is unlawful and for an order that the FEC to conform with this declaration within 30 days. 52 U.S.C. § 30109(a)(8).

45. Action by the FEC on MUR 6995 may result in the FEC compelling Right to Rise USA to amend their disclosures to properly identify its donors. If the FEC determines that any of the Respondents acted knowingly and willfully, it may make a referral to the Department of Justice for investigation into possible criminal penalties.

46. Plaintiffs have been harmed by the FEC's failure to act on the administrative complaint. The FEC's failure to act has allowed Right to Rise USA to continue to not correctly identify the persons who have donated money to the organization and to keep hidden the true source of the contribution. Although Plaintiffs alleged Mr. Swchartz was the source of the contribution passed through TH Holdings, neither Right to Rise PAC nor Mr. Schwartz have confirmed that he is the source, nevermind in a manner of similar credibility to an FEC filing subject to criminal penalties for false statements.  Further, Plaintiffs are entirely unaware of the true source of the contribution passed through Heather Oaks. The respondents' failure to disclose

information to which Plaintiffs are entitled hinders CREW in its programmatic activity and hinders Mr. Bookbinder in his ability to review campaign finance information.

47. Thorough investigation of administrative complaints and timely action by the FEC in making a final determination is in the public interest, and the FEC should rule on Plaintiffs' administrative complaint without further delay.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) Declare that the FEC's failure to act on Plaintiffs' administrative complaint (MUR 6995) is contrary to law;

(2) Order the FEC to act on the administrative complaint within 30 days, pursuant to 52 U.S.C. § 30109(a)(8)(C); and

(3) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

_/s/ Stuart McPhail_____
Stuart McPhail
(D.C. Bar No. 1032529)
Adam J. Rappaport
(D.C. Bar No. 479866)
Citizens for Responsibility and Ethics
   in Washington
455 Massachusetts Ave., N.W.
Washington, DC 20001
Phone: (202) 408-5565
Fax: (202) 897-1996
smcphail@citizensforethics.org